Mr. Brooks, when you're ready. May it please the court, good morning. Todd Brooks with Whiteford Taylor and Preston in Baltimore on behalf of the appellant Danilo Garcia. There are a number of issues on appeal on this appeal and I'm happy to address any questions the court may have but I want to focus on three issues in particular this morning. The first is some of the more significant evidentiary errors that occurred at trial, all of which the government concedes should be reviewed under an abuse of discretion standard. The second is the government's facially deficient pre-trial disclosure and third, why these errors among others identified in our brief are non-harmless. Now, the third, fourth, and sixth questions presented in our brief are collectively grounded in Rule 702 and Rule 403 violations. These are among the kinds of errors the courts have identified as risks inherent in dual witness testimony and so I'll begin with Rule 702 and this court's 2007 decision in Wilson. 702d requires an expert to reliably apply principles and methods in forming an opinion and so as a result we want to see two things in the record. First, we want to see opinions not facts cloaked as opinions and I'll get into that in a moment with with a few examples and the second thing we want to see is that every time there is an opinion or a purported opinion we want to see the reason why the expert reached the opinion that she did. This is precisely one of the errors that the court identified in Wilson and I'll turn to them both now. First, as the facts cloaked as opinions. Two of the better examples of this are actually right in the government's brief at footnote 8. Agent Dayton decoded the number 145 as 145 grams of heroin. One day after that wiretap call, Walter Powell was caught with 145 grams of heroin. That's not an expert opinion. That's telling the jury what you know about the evidence as a case agent and calling it an opinion and it's problematic for two reasons. One is that the jury now gets to hear the evidence twice. There's going to be surveillance of Walter Powell being stopped with 145 grams of heroin and then agent Dayton is going to take the number 145 and decode it as 145 grams of heroin and the only reason she knows it is because she was a case agent and she knows Walter Powell was stopped traveling back on 95 from Philadelphia and a similar example is in footnote 8. Agent Dayton decodes the number 500 as 500 grams of heroin and in footnote 8 the government explains that the reason she knew that was because two days after that wiretap call, Nancy Feliciano was stopped with 500 grams of heroin. That's not an expert opinion and we know it's not an expert opinion because even the district court at the outset of agent Dayton's testimony sustained objections that were lodged precisely on this ground and precisely on this basis and that's in the record at 364 to 68. Agent Dayton tried to the numbers 150 and 200 and this issue came up and the court sustained the objection but that was essentially it and there are many more examples in the government's brief I'm sorry in the record even aside from the examples in the government's brief but I think the most significant trouble here is that given that the vast majority of her testimony wasn't actually and she wasn't actually offering an opinion she was relying exclusively on what she knew as a case agent. When you look at the record here and you see that the overwhelming majority of her opinions there is nothing in the record to explain why she reached the particular opinion she reached that's problematic and I'm not making this up this is in Wilson and this is a quote from Wilson. In Wilson the decoding expert quote offered his interpretation of the meaning of a conversation without offering any reliable explanation as to why he opined that the conversation meant what it did end quote. But here unlike in Wilson where this court looked at the record and said the Wilson expert applied his methods and principles reliably in the vast majority of his testimony the record here contains no foundation at all for 29 of the 64 opinions agent Dayton reached about coded words and phrases and 45 of the 55 opinions she reached about coded numbers. And this is significant because when you when you look at the instances where agent Dayton or the government concedes that she only knows how to reach this opinion because she asked someone or because she's relying on what she knew as a case agent and then you couple that with the fact that 74 of the 119 opinions she offered at trial have no foundation the error is clear and the prejudice arises because 54 of those 74 opinions were that some term meant heroin. If you're going to do that you're going to offer 119 opinions 74 of them that don't have a foundation should and 54 of those should not be that some term is heroin it's a 702d violation. Now the second error that the court identified in Wilson is 702a arises under 702a the opinion should help the trier of fact understand the evidence and in Wilson the court described the expert was was test was decoding conversation clear conversations is the is the quote and the government here and the the district court here excuse me was mindful of this issue it instructed the government before agent Dayton took the stand that agent Dayton's testimony should be limited to decoding quote a certain reference that means something that's not apparent on its face end quote that's a 328. Now two noteworthy examples of how 702a routinely was violated first as decoded words on a call played for the jury Nancy Feliciano stated quote the police here got me and they took the stuff you gave me now an opinion is completely unnecessary for this because the evidence showed that Nancy Feliciano in fact was stopped with a bag full of stuff it was 500 grams of heroin and so to to take the word stuff and and to call that a code for which an opinion is necessary I just don't believe it but let me get to the numbers because when you look at the way agent Dayton offered opinions about numbers I think that this becomes a little bit more significant in Wilson the court identified a problem where the expert quote was not so much interpreting the meaning of coded language as he was adding language to it end quote that's in Wilson on 96 separate occasions agent Dayton offered 55 different opinions that a number was a code the number 125 was decoded as 125 dot dot dot grams of heroin that is precisely what the court identified in Wilson you're just adding language to a conversation and it's not just the number 125 which was decoded that way four times she offered 28 different opinions that a number meant a reference to grams of heroin in the exact amount of that number I won't rattle off a list here but I will just quickly turn to rule 403 here and then I'll I'd like to address harmless error we all know what rule 403 allows it allows a court to prohibitive value is substantially outweighed by among other things danger of unfair prejudice needless presentation of cumulative of cumulative evidence through 105 calls played for the jury over a five-day period agent Dayton decoded a term on 294 separate occasions 119 opinions at all now if you think about the math there there's a reason for this discrepancy 40 percent of the opinions she offered were offered to the jury more than once now I understand this is a five-day trial so that may happen she decoded the word car as heroin 41 times now just in case the jury wasn't clear that in her expert opinion car meant heroin after the third and fourth day of trial she decoded the car the term car is heroin 19 times on the fifth day of trial alone at some point enough is enough now I think that kind of takes me into harmless error and just point out that all of the errors we raise in our brief are related to agent Dayton and the wiretap calls except of course our sufficiency our excuse me our sufficiency argument has to count for but these errors arising out of the wiretap calls and agent Dayton's testimony are not harmless and there's two critical there's two reasons why we know this one is a legal issue the legal standard is whether the jury would have been substantially swayed by the errors and I don't know how they couldn't have been here it's not a but-for test and our briefs identify I mean I'll represent I read I read a ton of case law on decoding experts and what I found is that every case I read an error that was identified occurred here so every kind of category I read about I had here and not just once or twice but just numerous times for each kind of error this is the definition of cumulative error but the second reason we know this isn't harmless is we look at the record ourself and in some ways I think this case is is is pretty similar to the Johnson opinion that this court issued in 2010 in Johnson the government brought in a decoding expert that was never offered under 702 and the court essentially found that there was error because the this was a 701 lay witness who was decoding essentially the expert offered interpreted the meaning of conversations in four of only eight calls in Johnson that concerned Johnson only four what the court did was it looked at what was left in the record and it found that there was essentially testimony of three admitted drug dealer witnesses who had considerable credibility issues and the court looked at what was left in the record and it quote other than the wiretap calls and the testimony on just four of eight calls quote or the government quote offered no direct evidence that linked Johnson to the charge conspiracy no drugs were found no financial evidence was presented and there was no surveillance that captured Johnson engaging in illicit activity despite the extensive investigation mounted mounted by the local DEA end quote so against the backdrop of Johnson let's look at the record here counts there there are five convictions four of them are possession one is conspiracy now take the four possession counts three of them the the only and this counts four through six the only evidence that was presented at trial that linked appellant to someone else's possession of heroin once twice or three times removed was the wiretap calls in agent Aiden's testimony so this is precisely what gets us to harmless error in the first place count one is the conspiracy charge now other than the wiretap calls in agent Dayton's testimony there are essentially two categories of evidence that would support the conspiracy charge otherwise the first is the testimony of Yanni Rodriguez and you know this is similar to Johnson where you have an admitted drug dealer who's testifying under a plea deal with considerable credibility issues now I should I should also point out Yanni Rodriguez testifies on the sixth day of trial by the time he takes the stand agent Dayton already offered 111 of her 119 total opinions on 277 separate occasions and the majority of those opinions were decoding some term as heroin and the majority of those opinions were infused with one or more errors I take it you don't mean to suggest or perhaps you do that the timing of witness testimony factors into a harmlessness analysis I think at least in this case I do I don't think we need the timing issue I mean at the end of the day the jury's asked to consider the evidence at the end of the trial and I came after that the harmlessness analysis ought to take that approach absolutely I don't know how a jury could ever after hearing improper testimony for four straight days and then again after he leaves the stand I don't know how a jury could ever prop fairly evaluate Yanni Rodriguez's credibility and his testimony in general after hearing that I just don't see it and so the other category that would support that conspiracy charge is essentially I suppose the facts that support each of the possession counts I already discussed the counts four through six the three of the four possession counts where there is no evidence I mean there's this huge investigation they never they never spot him on surveillance with a handoff with drugs they never stopped so that four of the four four of the three three of the four possession counts excuse me there is no evidence other than the wiretap calls in agent Dayton's testimony count seven's a little bit different count seven predates the FBI's investigation and it goes back to April 2009 and essentially the government introduced evidence that um appellant was seen getting off of a bus stop at a at a Baltimore travel plaza the police threw their lights on he turned around walked back to the bus the police stopped him at the bus they recovered a brown bag that they believe he was carrying off of the bus from the bus itself and then inside of the bag was a manicure kit inside of the manicure kit were what we call fingers of heroin but this was not a slam dunk charge even on this one the defense brought out in cross-examination the fact that he actually was not caught red-handed the bag was recovered on the from the bus itself where there were other passengers this isn't a case where he walked off the bus they stopped him and he's holding a bag and there's nothing in the bag or in the contents of the bag that actually connect him to it and there's a few other facts that were that were um uh presented to the jury so even on this one which I would admit is the most significant evidence other other than the wiretap calls um even on this one there was enough there for a jury to go in a room and have an intelligent fair debate about whether the government could prove guilt beyond a reasonable doubt and I just think with the gravity of these errors here and I realize I'm not going to have time to get to the pretrial the facially deficient pretrial disclosure um I just don't see how this is harmless error I can't see it on this record too much too the prejudice was rampant and it could affect attorney general's Supreme Court stand. My name is Ahn Dukau and I represent uh the United States in this matter uh Your Honors, the uh District Court's the conviction of Mr Garcia should be affirmed because the District Court properly exercised its discretion in denying the defendant's pre-trial motion to exclude Special Agent Dayton's testimony the District Court properly exercised its discretion to allow Special Agent Dayton to testify as an expert and yes your honor the uh jury's guilty verdict was regarding count four was supported by sufficient evidence um your honor with regard to what uh Mr Brooks has just said regarding the length of the trial I just wanted to correct the record I don't blame Mr Brooks because uh he did not live this trial but but I did and I recall how much time it took it was actually a trial that uh occurred between October 2nd to October 18th so it was roughly a three-week trial I think what Mr Brooks meant to say was that Special Agent Dayton testified over the course of five days um and I would also like to address the uh harmless error argument argument your honor um Mr Brooks has has characterized Mr Yoni Rodriguez's testimony as being that of a cooperator who had credibility issues I submit your honor the fact that Yoni Rodriguez testified that he had dealings with Mr Garcia the defendant he testified solely with regard to his dealings with Mr Garcia that he sold heroin to Mr Garcia for resale he testified that he had I think one contact with one of the other trial defendants Roy Clay and he had no contact with the third trial defendant uh Dennis Ellison ultimately the jury found only Mr Garcia guilty they couldn't reach a unanimous verdict as to Mr Clay and Mr Ellison so I submit that the jury clearly found that Mr Rodriguez's testimony was persuasive um but isn't this really the kind of case that rises and falls on whether there was error you know so many cases are susceptible of the harmless error analysis but you know Mr Brooks has made the point and I think it's a pretty good one and I'm interested in your response if there is an error in how agent Denton testified and her references to items uh as a matter of expertise as to words as a matter of expertise that later show up as being part of of what actually factually happened in the case if that was error it happened again and again and again and again now maybe it's not error and we want to hear from you on that but if it was there I mean to have the jury exposed to for four or five days how could we ever say with confidence that it was harmless I submit your honor that it was not error and I will certainly address that but uh I and I take the court's concern that uh special agent Dayton did testify over a number of days but I would submit your honor that the fact that there was a guilty finding with regard to uh one defendant and a inability to reach any type of verdict as the other two defendants gives the court a unique window into the state of the evidence and the jury's thinking here there was a significant amount of evidence against this defendant Mr Garcia that was not present against the other two trial defendants specifically as I've just mentioned the testimony of Yoni Rodriguez as well as the testimony of Detective Craig Jester who recovered the fingers of heroin on in April of 2009 and with regard to timing of witnesses Detective Jester was the first witness in this trial he testified well before special agent testified so I submit that the court's concern that special agent Dayton's testimony regarding the coded language any concern that it's so infused this trial with error I think one if one looks at the record and one looks at the other evidence that was against this defendant that was not present against the other two defendants should allay that concern that special agent Dayton's testimony if it was error which I obviously submit that it wasn't that it's so infused the trial with such error that you could not be confident of the verdict in this case what would you say in response to someone who responded to what you just said by saying well isn't it just as likely as the jury said well we got to convict one of these guys I think your honor that's a cynical view of the jury and I think that that was not this jury's mindset I think this jury came to a conclusion that it could come to with regard to one defendant and just simply was unable to come to a conclusion as to okay so less cynically I think what you're asking us or what you're responding your response to Judge Keenan is if it was error then the presence of this witness took the government over the over the hump on Mr. Garcia but because that witness had nothing to say about these other two defendants the government didn't get over the hump isn't that exactly what Mr. Brooks is saying that there was a substantial effect on the jury's verdict what I'm saying your honor is that Mr. Rodriguez's testimony and Detective Jester's testimony and the jury's verdict can provide this court with assurance that if there was error in allowing Special Agent Dayton's testimony that that error was harmless because but see I'm not following that it seems to cut exactly the other way if the jury hung on the other two having heard the same reposit erroneous testimony and you bring in a couple of more witnesses on defendant number one Mr. Garcia doesn't that exactly prove that it wasn't harmless doesn't that it doesn't that demonstrate conclusively that it's not harmless because you account for the difference by just adding a little bit more I I don't think so your honor because I think that so if we say that because that obviously the common thread for all three defendants with it was the was the testimony of Special Agent Dayton and the concern with admitting her testimony the concern that has been expressed by this court in in Wilson and Baptiste in those cases is a is a concern about juror confusion we want to have the concern is jury prejudice not just jury confusion both juror presidents and juror confusion and the jury uh if the juror if the concern was juror prejudice and juror confusion then um I think that if there had been a guilty verdict across all across the board then there would be uh uh there would be more of a concern oh be careful you don't you may not want to you may not want to force that on assistant United States attorneys coming down here to argue I'm saying that harmlessness is is more likely demonstrated when all defendants get convicted when fewer than all of them get convicted my remarks are limited in this case are you suggesting that a hung jury means that improperly admitted evidence is is is by definition harmless what I'm suggesting is that seems to be what you're suggesting no I think it seemed to me aren't you arguing that it's all you've been diagramming if prejudice was the issue then all three of them are in that circle but the fact if that prejudice was so pervasive then all three would have been would have gone down to two but the difference was beyond the circle is the plus those witnesses against this person has made the difference not the prejudice because the prejudice was that all of them would have been convicted but that was the conclusion would be it's the plus factor that made the difference not the common prejudice that's the biggest yes your honor that is exactly my point better point um that the prejudice if there had been prejudice with regard to special agent Dayton's testimony it would have in this case not speaking for any other case but in this it would have affected and why do you say that that's my question why do you say that prejudice is only demonstrated upon a conviction which is which is what I was saying you were saying that if there's no conviction then per se there was no prejudice but I don't I don't know that that's true I I see that uh what you're saying that we certainly can't go back into the minds of the jurors did you retry them I'm sorry did you retry them uh Mr. Clay was retried and Mr. Elson uh pled guilty prior to Mr. Clay convicted uh yes he was on the same and so he's going to be back down here on the same record from agent Dayton the special agent Dayton did testify and what did you add in his case uh the uh difference in his case was uh I believe that he testified at he testified yes so he hung himself so to speak he did testify at the retrial I guess what I'm thinking though at this point is why do we want it to if there's error and we really need to hear from you on that why do we want to take a chance in trying to figure out what the jury was thinking and whether it was thinking there was oh more evidence here um so they must have done that that's a whole lot of um you know maybe logical plotting but but when you're talking about somebody's rights of liberty why do we want to take that chance if if the remedy is just do it over again and do it right well I submit your honor there was an error and so I I think I should address that since that is obviously you know a core concern of the court um so first with regard to her testimony she testified that she had a methodology she testified at joint appendix 285 that she looks for common terms uh she's testified that she looks at the context of the call itself whether the language makes any sense um she testified at uh joint appendix 839 that she looks at the context of the call um and whether it appears they're trying to that she looks at the context of the call and the overall context of all these calls take into account um the entire investigation and I submit your honor that uh the examples that the uh that Mr. Brooks pointed to that were examples of special agent Dayton not testifying as a coded expert when she testified about 145 grams in a call that was uh in which later on Mr. Powell was stopped with about 145 grams of heroin and she also testified uh that 500 grams what or 500 was a reference to 500 grams and then Ms. Feliciano was stopped with approximately 500 grams of heroin uh that is what a coded language expert does the coded language expert um has approved by this court in Wilson and Baptiste they look for patterns they look uh they they look at what is going on in this conspiracy because it is a conspiracy involving many people so they have to look at the entire investigation okay well how about uh just to if you could help me this is what's kind of left me scratching my head a little bit um like on appendix uh 924 and 925 924 she says when Mr. Garcia uses the term 500 that's code for 500 grams of heroin okay but then on 925 she said he uses the code number five to refer to 500 grams of heroin okay so on one page her expert testimony is the 500 means 500 grams of heroin are you saying she's saying it could mean either or she's saying that there are different parts of the conversation in which Mr. Garcia used 500 to refer to 500 grams of heroin and and and in one part where he used five to use to refer to 500 grams and is that because in the telephone call transcript then Mr. Garcia talks about 500 and then he talks about I need five yes so she's trying to figure out what that means she's trying to interpret for the jury that there are different numbers that are used that are code for the exact same thing what what suggests that what I don't understand from her expert testimony is how five hundred dollars uh one minute into the call means uh 500 grams of heroin and three minutes into the call five means 500 grams of heroin it just it uh it seems to me she's just kind of picking and choosing out of the transcript I submit your honor that what she did and what is expert about that I guess this is what I'm saying I don't know from the record why that's expert well your honor if you were to look at that call and hear that call without her um expertise you would just assume that 500 means 500 and that five means five um her expertise was necessary to explain to the jury that these that there are two different terms used two different numbers used to refer to the exact same thing so I submit your honor that that is an example where expert her expert opinion was necessary but I guess what what's really troubling me is that she's just stating a declaration of opinion based on really the progression of the phone call it looks like there's no independent basis why she's saying this is her expert opinion she provided uh throughout her testimony and perhaps not with every call but she provided throughout her testimony um her methodology which was her basis her methodology being uh to look for common patterns um and to look at the context as an example um I think you need only look at the uh uh at the uh chart laid out in defense counsel's opening brief she identified common words a number of times she identified cars 17 times working at least five times um at least eight times she identified smaller numbers to refer to larger numbers so um while may not she may not have stated her bases perfectly and at uh the conclusion or at the beginning of every call she did uh do what this court has um has asked expert testimony to do she laid out her methodology and she found the patterns uh that are in each call right that's that's the same to me with the full circuit precedent so once they opened the door and said this kind of thing is allowed she did what all of them do they they use content and and then later on before you end you said don't forget the five well it does seem like 500 and five are different but in that context that five was referenced to the 500 I mean so I suppose your argument is that once you're qualified on that methodology we'd almost have to find that the court was wrong to make her an expert at all but the way she does it see all these cases I see it it's the same one people say oh when did you cook well cook doesn't mean cook it means cooking drugs well where did that come from but but I'm not I'm not arguing with you I'm just saying that that's once you go down that line I don't see how you ever stop from the kind of thing you're talking about because you're right full circuit says it's allowed we've approved that another case before I still don't understand the basis of it but once you had that that genre what does it end I don't know well I think your honor that uh in this case special agent Dayton as I said talked about her methodology and I think it's also important to note that there was a lengthy limiting instruction given by Judge Blake in this case pretty confusing wasn't it I wasn't sure what it meant I think your honor what Judge Blake did convey was that the it was up to the jury to decide what value or worth this witness this any expert witness how could her expertise help her translate what you call them as heroin but where's the expertise in that the expertise comes your honor uh in in experiential expertise in uh being in working drug cases in talking to um those involved in the drug tracking field in looking at the whole investigation and looking what you call them the call ladies and gentlemen that's heroin yes your honor what you're gonna call it ladies and gentlemen that's heroin in this call and your honor um your honors well no uh drug trafficking code is not the same as say moore's code it's it's not fixed um it can change from it certainly changes from conspiracy to conspiracy from location to location it can change within the conspiracy it can change within the call it's it's the definition of a moving target so it's not possible for special agent Dayton or any expert um narcotics code language expert uh I would submit in most cases but certainly in this case um for her to offer sort of a dictionary or lexicon or um sort of Rosetta Stone at the beginning she uh had to go through each call because sometimes the code words shifted sometimes a given code word used mean meant different things sometimes girl meant a real girl sometimes girl meant heroin um and especially what was what is there in this record for this case that was sufficient to establish anything more than trust me ladies and gentlemen the jury I know this stuff trust me I've been doing this for x number of years I know how drug dealers talk to each other trust me where's where's the testability in that I think how could could she ever be proven wrong your honor she was crossed extensively of course she was crossed what I what I submit your honor is that she was crossed about um the meaning of slang versus code she was crossed about the way shoes was used in a in she testified that shoes was used in a coded way in one instance and used in a non-coded way in another instance so she was tested uh by defense counsel three defense counsel for this jury where is she tested outside the courtroom where's the testability of her does she go through some proficiency testing is there is there such a thing if you can answer yeah yes uh your honor there is no proficiency testing for this expert it is purely um experiential on the job training and possibly some um you know other more formalized training but largely it is experienced we're just sort of stuck with what we're stuck with uh with regard to testing of her um the answer to your question is there's no outside testing as with with certification of a scientific expert you know and I understand your point with regard to certain things maybe people characteristically talk about heroin as car and stuff but you know she she decoded 53 different numbers and she and that's what's really troubling me she decoded the numbers to mean different things depending on the phone conversations that occurred and then coincidentally her interpretations match up with with with what ultimately was said on the phone calls um she's saying like here I wrote one down she says two means 200 at at joint appendix 600 but that two could also be 2000 she says that at 533 well if two means 200 in one place 200 how does two mean 2000 at another place you see what I'm saying when it comes to numbers there's just nothing unique it seems to me about testimony as opposed to car or something else that could be used as a code word the numbers seem to fit the situation for her may I respond your um I'd submit that the numbers were code were it was necessary to interpret the numbers because the numbers as your honor pointed out in your prior question the numbers did not always mean what the numbers what you would think the numbers would mean so it was necessary for her testimony to explicate what the numbers in fact meant um well doesn't that just come down to Judge Davis then what he said trust me this is what I say it is and I'm an expert trust me how can you test that I think uh you tested the across examination by pointing out the ways in which um certainly it was inconsistent when she said that five meant 500 and 500 meant 500 and she was asked about those inconsistencies and they were pointed out to the jury and she did it again and again okay thanks thank you the number five actually means three things not to create more confusion it means five grams of it might depend on the context that's what she says she uses pattern and context right my question to you is this I understand your argument it's a lot of it's a good a lot of merit but this panel can't overrule another panel in a you know as you know in a published case right you know that that's right right so this whole idea of and it may be said exactly that but once we said that we allowed this whole genre of you become an expert because I say the same thing where's the college you go to where the classes but it's for certain say yes you can after investigating these cases you become an expert and you can testify they do that all the time that's exactly what they do they said sugar means heroin how do I know sugar means sugar to me but they somebody said that's the same thing trust me but why is this not the same thing this is a trust me case like most of them right right yeah I appreciate that I'm not here to say that decoding experts there is no such thing the solution quite frankly and you I could you know write a journal about this you can't have a case agent be your expert because there is no method up you can get up there and say oh I've got a great methodology and when counsel was referring to she has a great methodology all she did was present the right buzzwords I look for patterns I look for context that's not what she did she relied exclusively on the record evidence it's a difference between 702c and 702d the difference of do you have a proper methodology if so check off c if you don't reliably apply that methodology you x at 702d I need to I need to just address a few points the reason there were different verdicts there were 210 calls 211 calls played for the case Garcia was on 142 of them now I don't know how many times the other two co-defendants were on them I would I would be willing to bet collectively 10 that's that's why these are errors I'm not creative enough to make these up my day job is the practice of bankruptcy law I didn't make this stuff up and when I read Wilson and when I read Baptiste and when I read Ducagini the second circuit opinion I just I find myself looking at him say these same things happen here except the frequency is five straight days of testimony not just a few examples which is you don't object to her being qualified as an expert your objection is that she strayed from the foundation which was the basis of her expertise you're correct generally speaking I mean I do have I don't think she had a proper methodology because at the end of the day she said the right things I look for patterns I look for context but one thing you also do is confirm your understanding of the coded language used in the case by talking to who co-conspirators so what did you mean in this call and you ask a co-conspirator what the moment you have the answer from the person who was speaking you have an obligation to bring that person into court and that's the problem here we know why 74 of the 119 opinions lack the foundation because in a few instances where a foundation came in the court said then that's not an opinion had the foundation been laid you'd say okay well where is Diego Amparo where is Nancy Feliciano we need to be able to cross-examine them if that's how you're coming up with these codes let me see here and so the number 145 we know that 145 is not an expert opinion suppose you had a battle of the experts with two experts reach a different conclusion about the you know 55 opinions she reached about a number it's not up for debate you took the facts as you knew them and you came to the right conclusion which is why five means three different things thank you your honors all right thank you very much yes uh were you were you caught upon it i'm sorry were you caught upon it i i i work i work for the court the court eric barron is the court supporting attorney yeah i've worked on the cases so you're not representing on the cja um i don't want to make it complicated just that well in a way bono you're not but you're not going to submit in the interest of covering all territory we thank you very much for your representation here whatever it is in terms of that rubric we really appreciate that and we thank you very much and mr ducato also for the united states and we're going to come down
judges: Roger L. Gregory, Barbara Milano Keenan, Andre M. Davis